**Bernard G. WALSTON,**
**Appellant (Defendant),**

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

**No. 84–261.**

Supreme Court of Wyoming.

Aug. 8, 1985.

Leonard D. Munker, State Public Defender, Martin J. McClain, Appellate Counsel, Wyoming Public Defender Program, Cheyenne, Jim Dinneen, Student Intern, Defender Aid Program, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Senior Asst. Atty. Gen., Michael A. Blonigen, Asst. Atty. Gen., for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

ROSE, Justice.

In this appeal we are asked to decide whether there was sufficient evidence for the jury to find and the trial court to enter judgment finding the appellant guilty of driving a motor vehicle while under the influence of intoxicating liquor, in violation of § 31–5–233(a), W.S.1977, which, as amended by Ch. 52, § 1, S.L. of Wyoming 1982, provides:

"It is unlawful for any person who is under the influence of intoxicating liquor, to a degree which renders him incapable of safely driving a motor vehicle, to drive * * * any vehicle within this state."

Therefore, the elements of the offense are: (1) that the person charged (2) be driving a vehicle (3) within the State of Wyoming, and (4) such a person be under the influence of intoxicating liquor (5) to a degree which renders him incapable of safely driving a motor vehicle.

This court has held that each of the aforesaid elements must be proved in order

that a prima facie case be established under the statute. Crum v. City of Rock Springs, Wyo., 652 P.2d 27, 28 (1982).

## FACTS

The facts most favorable to the appellee are these:

At approximately 7:00 p.m. on June 23, 1984, a deputy of the Lincoln County Sheriff's Department entered the Triangle Bar in Kemmerer in order to serve some civil papers on the appellant, Bernard Walston. He served the papers, and noticed that appellant had a drink in front of him. After the deputy returned to his patrol car, he observed the appellant leave the Triangle Bar, enter his pick-up truck, and drive away. He followed the appellant because he believed, from his previous observation, that he was too drunk to drive.

The officer followed Walston for approximately one mile, during which time the appellant was driving in what was described as a "zigzag" motion. On two occasions he crossed the center line by a minimum of two feet, and was observed making turns and then over-correcting when he completed them. After observing the appellant for a distance of a mile or more, the deputy stopped Mr. Walston because he believed him to be operating his vehicle in an unsafe manner.

Having stopped the vehicle, the deputy asked Walston to perform some field sobriety tests, which he was unable to do correctly or adequately. In a conversation with the officer, Mr. Walston offered to do some tests of his own, and he asked the deputy sheriff if he was going to be arrested for driving under the influence of intoxicating liquor. During this conversation, appellant's speech was slow and slurred. The officer testified that there was an odor of alcohol about Walston's breath and person, and that his eyes were bloodshot and watered. The deputy reported that Mr. Walston leaned on the tailgate to keep his balance. After observing these things, the officer arrested appellant and inquired if appellant would be willing to take a breathalyzer or other chemical test, and he refused. When Walston was booked into the Lincoln County jail, the jailer noted that he had a difficult time answering simple questions and that his speech was slurred.

### The Sufficiency of the Evidence

The standard against which this court tests sufficiency-of-the-evidence questions was set out in *Simmons v. State*, Wyo., 687 P.2d 255, 257 (1984), when we said:

" * * * We test the sufficiency of the evidence on appeal by examining and accepting as true the evidence of the prosecution, leaving out of consideration entirely the evidence of the defendant in conflict therewith; we give every favorable inference which may reasonably and fairly be drawn to the evidence of the prosecution. In other words, it is not whether the evidence establishes guilt beyond a reasonable doubt for us, but whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in a light most favorable to the state. [Citations.]"

■ In order to establish a violation under § 31–5–233(a), it is not required that a blood test be given, but there must be evidence that the defendant consumed alcohol. *Hammer v. Town of Jackson*, Wyo., 524 P.2d 884 (1974).

■ The evidence in this case is sufficient to support a finding that appellant was intoxicated to a degree which rendered him incapable of safely operating a motor vehicle, and all of the elements of the crime are supported by substantial evidence. The deputy observed Mr. Walston in a bar where he appeared to have a drink in front of him, and he followed the appellant because he felt that he was too drunk to drive. When Walston was stopped, the deputy smelled alcohol, and Mr. Walston himself admitted that he had been drinking. Furthermore, there is ample evidence that alcohol had been ingested by Walston. In fact, there is evidence that appellant was drinking just before he left the bar,

and he admits he had been drinking that afternoon. Once such evidence is introduced, there is a reasonable inference that the driving behavior of appellant was affected by alcohol. The rational relationship between the bloodshot eyes, poor balance and difficulty communicating with police and the ingestion of alcohol is clearly established. Appellant offered no alternative explanation for his condition and appearance.

Similarly, there is more than ample evidence that Walston was incapable of safely operating a motor vehicle. The police officer testified that appellant crossed the center line twice by more than two feet, he overcorrected on turns, and his inability to maintain his proper place on the road presented a clear and present danger to the driving public. Mr. Walston's performance when given the field sobriety tests, his demeanor at the time of arrest and his poor balance indicate a definite impairment of his ability to react properly and safely to possible traffic hazards. The only rational explanation for this behavior is that he was intoxicated.

There can be no question but that the record contained sufficient evidence to support the charge.

Affirmed.